1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   TIMOTHY C. NELSON,                NO. 2:05-cv-01193-MCE-KJM

12           Plaintiff,

13       v.                            MEMORANDUM AND ORDER

14   CITY OF DAVIS; JAMES HYDE,
     individually and in his
15   official capacity as Chief
     of Police for the CITY OF
16   DAVIS; CALVIN HANDY,
     SERGEANT MICHAEL MASON,
17   OFFICER JAVIER BARRAGAN,
     OFFICER BRANDON JONES,
18   OFFICER CALVIN CHANG,
     OFFICER M. GARCIA,
19   individually and
     DOES 1-100, inclusive,
20
             Defendants.
21
                              ----oo0oo----
22

23

24       Plaintiff Timothy C. Nelson ("Plaintiff") seeks damages as

25   result of injuries he sustained during law enforcement activities

26   necessitated by a disturbance at an apartment complex in Davis,

27   California.  Defendants include the City of Davis, Davis Chief of

28   Police James Hyde, and Davis Police Sergeant John Wilson.

                                      1

1    In addition, because University of California, Davis ("U.C.
2    Davis") police personnel assisted the City of Davis Police
3    Department in quelling the disturbance, Plaintiff has sued U.C.
4    Davis Officers Calvin Handy, Javier Barragan, and Mary Garcia.
5    Plaintiff alleges that Defendants violated his constitutional
6    rights by subjecting him to unreasonable seizure in violation of
7    both the United States and California Constitutions.  Plaintiff
8    further asserts constitutional equal protection claims, as well
9    as  additional common law and statutory claims sounding under
10   California law.

11   Presently before the Court are three motions for summary
12   judgment, or alternatively partial summary judgment of certain
13   issues.  The motions are brought on behalf of 1) the City of
14   Davis Defendants (Davis, Hyde and Wilson); 2) the U.C. Davis
15   Defendants with the exception of Calvin Chang (Handy, Barragan
16   and Garcia) and 3) Defendant Calvin Chang, individually.  For the
17   reasons set forth below, Defendants' Motions will be GRANTED.

18
19                          **BACKGROUND**
20
21   On the evening of April 16, 2004, following the annual
22   Picnic Day festivities held at U.C. Davis, as many as a thousand
23   young people gathered at the Sterling Apartment complex on
24   Cantrill Drive in Davis.  One resident of the complex described
25   the gathering as "the biggest party in history".  The Plaintiff,
26   a 20-year old college student, was in attendance.
27   ///
28   ///

2

1    The City of Davis police became aware of the party after
2  noticing virtually gridlocked traffic along Cantrill Drive, and
3  upon observation of illegally parked cars on both sides of the
4  street for virtually its entire length.  The police station
5  itself was located near the apartments at the corner of Cantrill
6  and Fifth Streets, and the sergeant on duty, Defendant Wilson,
7  dispatched police officers to begin issuing parking citations to
8  clear the improperly parked vehicles.  The police also checked
9  the party itself, which Sergeant Wilson described as both
10  unusually large and loud.  Underage alcohol violations were
11  observed, and Wilson claims he observed individuals trying to
12  vandalize vehicles by rocking them back and forth.  One resident
13  described a chair being thrown from an upper story window.  After
14  apprising an agent for the complex owner of the situation,
15  Sergeant Wilson was asked shortly before midnight to request that
16  all non-residents leave the premises under penalty of trespass.

17    The crowd did not respond to the police's initial request to
18  disperse.  Sergeant Wilson ordered two of the officers, who had
19  been on foot, to go back to the nearby station and return with
20  their patrol vehicles for an additional police presence.  As one
21  of the vehicles drove through the complex (a group of several
22  story buildings situated on a rectangular lot), Wilson observed
23  partygoers surround the vehicle and begin throwing bottles.
24  Although the patrol vehicle activated its emergency lights and
25  siren, Wilson states that it was unable to exit the complex
26  absent rescue intervention from both himself and other officers.
27  Wilson then called for backup as both he and the officers
28  retreated back to the driveway at entrance to the complex.

1   About forty officers arrived at the Davis Police station in

2   response to Defendant Wilson's request, including Lieutenant

3   Darren Patel, who upon arrival assumed the role of incident

4   commander.  U.C. Davis police officers, including Defendants

5   Chang, Barragan and Garcia, were among those who responded.

6   Unlike their City counterparts, the U.C. Davis officers had

7   pepperball launchers in their arsenal for crowd dispersal.

8   Pepperball launchers are dual purpose weapons that shoot round

9   plastic balls filled with Oleoresin Capsicum ("OC") powder, a

10  substance similar to pepperspray.  The launchers combine the

11  shock of kinetic impact (similar to paintballs) with the sensory

12  discomfort associated with pepperspray.  They are designed to

13  break apart and disperse the OC powder upon impact.

14   Pepperball use is considered appropriate as long as the

15  projectiles are not aimed directly at sensitive body parts (such

16  as the face and groin) at distances of more than thirty feet.  In

17  addition, pepperballs may properly be launched at hard building

18  surfaces like walls, ceilings, doors and windows within a hundred

19  foot radius for effective dispersal, or "area saturation", of the

20  OC to the surrounding vicinity.  Within these parameters,

21  pepperball use in crowd control and riot situations meets Peace

22  Officer Standards Training ("POST") guidelines, and further was

23  authorized by U.C. Davis Police Department policy.

24   Following the officers' initial retreat, the evidence shows

25  that the Sterling party careened further out of control.

26  Sergeant Wilson could hear individuals shouting "fuck the police"

27  as the officers regrouped at the station.

28  ///

4

At about 1:00 a.m., after meeting together to form a dispersal plan, between 30 and 40 officers proceeded on foot to the southwest corner of the apartment complex in full riot gear (helmets, shields and batons).  Four U.C. Davis officers, including Officers Chang, Garcia and Barragan, carried pepperball launchers.  Crowd dispersal orders were given.

After observing the police, Plaintiff testified that he retreated inside one of the complex buildings to a friend's apartment.  Both officers and partygoers attest to the fact that bottles and other objects were being thrown at the police from various vantage points at this juncture, including upper story balconies.  At least one officer was injured by a thrown bottle, and several others reported only narrowly being missed on numerous occasions.  When Plaintiff came downstairs and attempted to exit the building, he admits that he heard crowd dispersal orders issued by the police to "leave and go inside".[1]  He thereafter retreated inside the hallway where he remained about fifteen minutes.

There is no dispute that the officer's initial sweep through the complex in riot gear failed to adequately disperse the partygoers.  Bottles and other debris continued to be thrown at the police from multiple directions.  The second sweep was thereafter ordered and began from the southwest corner of the complex in front of a breezeway.

---

[1] The fact that Plaintiff admittedly heard and understood the dispersal orders being given, and went inside the complex as a result, renders moot any claim that the orders were insufficient to place him on notice of the police directive. Consequently, Plaintiff's claims that amplification was not utilized and that exit routes were inadequate is immaterial.

During that second sweep, officers observed a group of between fifteen and twenty individuals congregated at the back of an apartment breezeway. Bottles were being thrown from the rear of that group.  According to Officer Wilson, after twice ordering those present in the breezeway to disperse without success, he ordered the U.C. Davis officers (Chang, Barragan and Garcia) to launch pepperballs.  The officers aimed both at hard surfaces adjacent to the breezeway (the doors, ceiling and walls) and at individuals who they observed throwing bottles (from below the shoulders).

Despite Plaintiff's admission that he both heard and understood the dispersal orders and observed the police in riot gear, he nonetheless elected, contrary to the *explicit* directive he had been given to remain inside the apartment, to exit a set of double doors leading into the breezeway.  As he exited, he testified being immediately aware of the presence of stinging pepperspray.  He heard the sound of "mace bullets" hitting the windows, doors and at points overhead.  (Pl.'s Dep., 104:22-105:15, 107:4-108:9).  He was thereafter almost simultaneously struck in the eye by a pepperspray bullet and allegedly sustained permanent injuries to his left eye.  As Plaintiff's police procedures expert admitted, Plaintiff walked into the line of fire once he exited the hallway.  Plaintiff does not know who launched the pepperball that struck him.  He denies ever throwing anything at the police.

///

///

///

6

The aftermath of the disturbance confirmed that vehicles and apartments were vandalized during its course, and that at least one swarm robbery occurred.  One resident described the Sterling complex as having been "trashed".

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also* Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

///

1  In considering a motion for summary judgment, the court must

2  examine all the evidence in the light most favorable to the non-

3  moving party.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

4  Once the moving party meets the requirements of Rule 56

5  by showing that there is an absence of evidence to support the

6  non-moving party's case, the burden shifts to the party resisting

7  the motion, who "must set forth specific facts showing that there

8  is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,

9  477 U.S. 242, 256 (1986).  Genuine factual issues must exist that

10 "can be resolved only by a finder of fact, because they may

11 reasonably be resolved in favor of either party."  Id. at 250.

12 In judging evidence at the summary judgment stage, the court does

13 not make credibility determinations or weigh conflicting

14 evidence.  See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809

15 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus.

16 Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

17

18                        **ANALYSIS**

19

20 **A.   Unreasonable Seizure under the Fourth Amendment**

21

22 Plaintiff's First and Fourth Claims for Relief assert his

23 right to be free from unreasonable seizures under the Fourth

24 Amendment of the United States Constitution and Article I,

25 Section 13 of the California Constitution, respectively.[2]

26

27 _____

   [2] Because the instant federal constitutional protections
parallel those afforded by state constitution in this regard,
28                                              (continued...)

8

The Court must necessarily initially determine whether any "seizure" has occurred giving rise to constitutional protection.

"A seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." Graham v. Conner, 490 U.S. 386, 395 n.10 (1989). The Supreme Court has further recognized that any constitutional violation in this regard "requires an intentional acquisition of physical control." Brower v. County of Inyo, 489 U.S. 593, 596 (1989). As the Brower court explained:

> "[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), or even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied."

Id.

To constitute a seizure, "the taking or detention itself must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." Id. (internal quotations omitted).

Although the Ninth Circuit has not squarely addressed the issue of whether the rationale of Brower should be extended to instances where a bystander is inadvertently shot by police, the weight of authority elsewhere supports that proposition.

---

[2](...continued)
the discussion that follows relies upon Fourth Amendment jurisprudence. See Sanchez v. County of San Diego, 464 F.3d 916, 928 (9th Cir. 2006).

9

In Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 795 (1st Cir. 1990), the First Circuit found that no Fourth Amendment seizure occurred because the plaintiff in that case was inadvertently shot during the police pursuit of a robbery suspect and hence was not intentionally seized by the police bullet that struck him. Similarly, in Rucker v. Harford County, 946 F.2d 278, 280 (4th Cir. 1991), the Fourth Circuit ruled that a seizure within the Fourth Amendment could not be demonstrated where the victim, an innocent bystander, was not the "intended object" of law enforcement activity but instead was shot and killed by police officers attempting to apprehend a fleeing criminal.  Caselaw from other circuits is also in accord.  See, e.g., Childress v. City of Arapaho, 210 F.3d 1154, 1157 (10th Cir. 2000); Medeiros v. O'Connell, 150 F.3d 164, 169 (2d Cir. 1998); Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000).

Plaintiff argues that this "bystander" line of cases is inapplicable on grounds that the testimony of some witnesses suggests that Plaintiff may have been in the breezeway at the time the police began launching the pepperball projectiles, and consequently was within the intended scope of the officers' fire.[3]

---

[3]The caselaw Plaintiff cites is otherwise distinguishable from the circumstances of the case at bar.  While Jensen v. City of Oxnard, 145 F.3d 1078 (9th Cir. 1998) did find that a Fourth Amendment seizure occurred, that case involved the "friendly fire" killing of a police officer where the evidence showed that the decedent was targeted deliberately despite a mistake as to his identity. Additionally, while the victim shot by police in Fisher v. City of Memphis, 234 F.3d 312 (6th Cir. 2000) was only the passenger in a car that attempted to strike two people standing, there was no question that the police officer intended to shoot at the vehicle in which the victim was riding.

1    Any inference in that regard that may be drawn from the

2   equivocal testimony of others, however, is nullified by

3   Plaintiff's own clear version of what transpired during the

4   period immediately surrounding his injury.  Plaintiff testified

5   at deposition that he went inside an apartment building after

6   hearing a dispersal order to that effect from the officers.

7   He went inside a set of double doors, but after remaining inside

8   for between ten and fifteen minutes decided to go back outside

9   despite his admission that he had been told otherwise.  He states

10  1) that he heard the impact of shots being fired against the

11  doors, and over his head, as he exited; and 2) that he felt the

12  sting of pepperspray before something impacted his eye as he went

13  out the double doors.  Pl.'s Dep., 104:18-23, 107:4-109:13.

14  Plaintiff also testified that he was shot virtually

15  instantaneously with his exit back into the outside breezeway.

16    As a whole, Plaintiff's testimony establishes that the

17  police officers began shooting before Plaintiff had exited back

18  outside through the doors into the breezeway, since Plaintiff

19  could not have heard the impact of pepperspray bullets and felt

20  the sensation of a chemical irritant unless the volley had

21  already been launched before he went outside.  Plaintiff cannot

22  avoid summary judgment by citing testimony allegedly inconsistent

23  with his own testimony, as he attempts to do in arguing that

24  other witnesses offer confusing accounts of his whereabouts at

25  the time he was struck.

26  ///

27  ///

28  ///

11

Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995); see also Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th cir. 1991) (Plaintiff cannot create an issue of fact by an affidavit contradicting his own prior deposition testimony). Moreover, as indicated above, even Plaintiff's own police practices expert concedes that Plaintiff walked into the line of fire from a position in the hallway. Dep. of Roger Clark, 102:4-7.

Plaintiff's own version of events mandate the applicability of the bystander cases.  Given his own admissions, he cannot argue that he was an intended object of the police barrage against the group in the hallway whose members were throwing bottles at the police.  Hence no seizure within the meaning of the Fourth Amendment occurred, and summary adjudication as to the First and Fourth Claims for Relief will be granted.[4]

**B.  Due Process Claims**

In addition to claims under the Fourth Amendment as discussed above, Plaintiff argues, in his Second and Fifth Claims for Relief, that his substantive due process rights were also violated by Defendants' use of force, citing the Fourth Amendment of the United States Constitution and Article I, § 7(a) of the California Constitution.

///

///

---

[4] Because no seizure occurred in the first place, it is not necessary to consider here whether a seizure, had it occurred, would have been deemed unreasonable under the Fourth Amendment.

12

1    The concept of substantive due process protects against
2  arbitrary governmental action lacking "any reasonable
3  justification in the service of a legitimate governmental
4  objective." County of Sacramento v. Lewis, 523 U.S. 833, 846
5  (1998).  As the Supreme Court explains, "only the most egregious
6  official conduct can be said to be arbitrary in the
7  constitutional sense" on due process grounds.  Id.
8  Even negligently inflicted conduct fails to satisfy this high
9  threshold; rather, only conduct "so egregious, so outrageous that
10 it may fairly be said to shock the contemporary conscience" may
11 suffice.  Id. at 847.

12   As a preliminary matter, the fact that Plaintiff was not an
13 intended target of the pepperspray bullets launched into the
14 crowd in the breezeway (because he exited the double doors
15 leading onto the breezeway after the shooting started), would
16 appear dispositive of Plaintiff's due process claims just as it
17 prevents him from stating a cognizable claim under the Fourth
18 Amendment as discussed above.  In Moreland v. Las Vegas
19 Metropolitan Police Dept., 159 F.3d 365 (9th Cir. 1998), the
20 police, upon responding to a reported parking lot fight,
21 encountered a male firing a semiautomatic weapon at individuals
22 who were returning his fire.  When the male failed to heed their
23 order to stop firing, the police opened fire and, in the process,
24 accidentally killed a bystander, Douglas, who was one of between
25 fifty and a hundred individuals trapped in the parking lot.
26 ///
27 ///
28 ///

13

In analyzing the due process rights inuring to Douglas' family members, the Ninth Circuit identified the "controlling question" as "whether [the officer] acted with a purpose to harm Douglas that was unrelated to his attempt to stop the male in the parking lot from endangering others."  Id. at 373.

The circumstances here show that Defendants could not have acted with a purpose to harm Plaintiff since he was not even among the crowd of individuals in the breezeway when they opened fire; instead, by the admission of both Plaintiff and his police practices expert, Plaintiff simply walked into Defendants' line of fire.  Even apart from the fact that Plaintiff was not an intended target, however, Defendants' conduct cannot be deemed egregious and/or outrageous in any event, as it must in order to trigger due process liability.  Where, as here, police officers are called in to restore order in a rapidly evolving, tense environment fraught with potential danger, any due process violation turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  County of Sacramento v. Lewis, supra, 523 U.S. at 853.  Even "precipitate recklessness" does not suffice to "spark the shock" required to state a viable due process excessive force claim.  Id.

Plaintiff argues that the officers' conduct in attempting to disperse the crowd was deliberately indifferent.  He alleges that "firing indiscriminately into a crowd was outrageous", and that the police had time to consider other means available at their disposal before resorting to the use of pepperball bullets.  Pl.'s Opp., p. 18.

14

Plaintiff's position that this equates into egregious behavior sufficient to shock the conscience simply cannot be maintained under the circumstances.

Specific and explicit verbal requests for dispersal went unheeded, and the size of the crowd, violence in the form of throwing objects and vandalizing property, and threats against the police officers (chants of "fuck the cops") made it necessary for the police to regroup before returning in force and in riot gear to quell what was rapidly devolving into full-blown riot conditions. Pepperball launchers were utilized only where groups still refused to disperse, were still throwing objects at officers, and failed to accede to final warnings before the capsules were dispersed. This behavior on the part of the police simply does not amount to the egregious indifference needed to state a due process claim. Consequently Plaintiff's claim under the Fourteenth Amendment must fail. In addition, because the California Supreme Court has held that damages claims cannot be stated for violations of Article I, § 7(a) of the California Constitution, Plaintiff's due process claim founded on the state constitution is also unavailing. Katzberg v. Regents, 29 Cal.4th 300, 324 (2002). Hence the Second and Fifth Claims for Relief will be adjudicated in favor of the defense.

///
///
///
///
///
///

15

1       **C.  Violation of Equal Protection Rights**

2

3       Plaintiff's Third and Sixth Claims for Relief are asserted

4 on equal protection grounds, also pursuant to the Fourteenth

5 Amendment to the United States Constitution and Article I, § 7(a)

6 of the California Constitution.  This claim is based on

7 Plaintiff's contention that the police shot him in the eye with a

8 pepperball "due to the fact that he was a University student."

9 (See Defendant Chang's Undisputed FactSee No. 47).

10      No viable equal protection claim can be asserted in this

11 case.  In order to prevail on such a claim, Plaintiff must first

12 establish that Defendants classified and singled out a group of

13 which he was a member.  There is absolutely no evidence, however,

14 that the police engaged in any such classification either on

15 grounds that the partygoers were university students or on any

16 other basis.  Additionally, even if the police had been able to

17 identify university students, an unlikely scenario since

18 individuals cannot be so classified based on observation alone

19 (unlike other suspect classification like race), Plaintiff would

20 still need to show that other non-university students in similar

21 circumstances were treated unequally.  See Silveira v. Lockyer,

22 312 F.3d 1052, 1088 (9th Cir. 2002).  Again, there is no evidence

23 of any such distinction having been made that would provide the

24 requisite control group for a valid equal protection argument.

25 ///

26 ///

27 ///

28 ///

16

Even were Plaintiff able to identify a control group and establish that university students were treated differently than members of the control group, his equal protection claim would still fail.  Because students are not considered a "suspect class" (see KDM ex rel. WJM v. Reedsport Sch. Dist., 196 F.3d 1046, 1052 (9th Cir. 1999)), scrutiny of their treatment by the state is under the rational basis test, and survives constitutional scrutiny if "rationally related to a conceivable and legitimate state interest." Tuan Anh Nguyen v. INS, 533 U.S. 53, 77 (2001).  Here, there is no question that the police were pursuing a legitimate government interest by suppressing a violent disturbance and restoring the peace.

Plaintiff's federally-based equal protection claim is accordingly without basis.  In addition, because the California and federal claim tests for assessing equal protection are substantially the same, there is no viable argument that Plaintiff's claim substantively fares any better under state law. See Sail'er Inn, Inc. v. Kirby, 5 Cal. 3d 1, 15 (1971). Moreover, and as indicated above, California law does not support damages claims under Article I, § 7(a) in any event.  See Katzberg v. Regents, supra, 29 Cal. 3d at 324.

///
///
///
///
///
///
///

17

1        **D.   Viability of Other Federally-Based Claims/Defenses**

2

3        The Court concludes, consistent with its discussion above,

4 that Plaintiff has established no cognizable claim sounding

5 either in the protections afforded by the Fourth or Fourteenth

6 Amendments, or in corresponding unreasonable seizure/due process

7 provisions contained within the California Constitution.   The

8 Court has further rejected Plaintiff's constitutional equal

9 protection claims.   Absent any such underlying constitutional

10 violations, Plaintiff cannot state claims premised on Defendants'

11 alleged official policies in facilitating such violations, or

12 supervisory/ratification claims against other police personnel

13 for constitutional violations that did not occur.   <u>See, e.g.,</u>

14 <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 810-11 (1986) no

15 government liability for official policy or custom pursuant to

16 <u>Monell v. Dept. Of Social Services</u>, 436 U.S. 658 (1978) absent

17 foundational constitutional violation).   Moreover, without any

18 constitutional violation subject to potential immunity it is also

19 unnecessary to consider the defense claims for both qualified

20 immunity and absolute judicial immunity, and the Court declines

21 to do so.   <u>See, e.g.,</u> <u>Moreland v. Las Vegas</u>, <u>supra</u>, 159 F.3d at

22 371 n.4 (approach in resolving cases in which defense of

23 qualified immunity is raised should first be to determine whether

24 plaintiff has sustained a constitutional injury at all, citing

25 <u>County of Sacramento v. Lewis</u>, <u>supra</u>, 523 U.S. 833, 841 n.5.).

26 ///

27 //

28 ///

1    **E. Causes of Action Premised Upon State Law**

2

3    Pendent state claims asserted by Plaintiff include claims

4    for assault and battery, intentional infliction of emotional

5    distress, negligence and violation of the Bane Act, California

6    Code of Civil Procedure § 52.1.

7    Turning first to assault and battery, it is clear that an

8    assault and battery claim against a police officer requires that

9    unreasonable force be established.  Edison v. City of Anaheim, 63

10   Cal. App. 4th 1269, 1272 (1998); Finley v. City of Oakland, 2006

11   WL 269950, *14 (N.D. Cal. 2006).  As an initial matter, because

12   the same standards apply to both state law assault and battery

13   and section 1983 claims premised on constitutionally prohibited

14   excessive force, the fact that Plaintiff's constitutional claims

15   fail also disposes of the assault and battery claims.  See, e.g.,

16   Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412-13

17   (2002) ("[i]t appears unsound to distinguish between section 1983

18   and state law claims arising from the same alleged misconduct);

19   Saman v. Robbins, 173 F.3d 1150, 1156-57 (9th Cir. 1999)

20   (treating section 1983 and state law battery claim as

21   synonymous).

22   An examination as to the reasonableness of the force

23   employed does not change the conclusion that Plaintiff's assault

24   and battery claim is unavailing.  Here, the evidence

25   unequivocally demonstrates that the officers were confronted with

26   a hostile crowd that refused to leave, even after the police made

27   one pass through and gave numerous orders to disperse.

28   ///

1  In addition, before firing into the crowd at the end of the

2  breezeway, Officer Wilson testified he gave a dispersal order

3  that included a warning that shots would be fired if his request

4  went unheeded.  Officer Wilson further testified that he waited

5  between 30 and 45 seconds before actually ordering the officers

6  equipped with pepperball launchers to fire.  Finally, Plaintiff

7  walked into the line of fire despite admitting that he heard

8  orders to go inside, and despite hearing shots before he exited

9  outside.  There is no evidence that anyone walked though the door

10 before Plaintiff walked through.  These circumstances do not

11 demonstrate unreasonable force.

12       Second, under California law, the tort of intentional

13 infliction of emotional distress requires Defendants to have

14 engaged in extreme and outrageous conduct with the intention of

15 causing severe emotional distress.  Potter v. Firestone Tire &

16 Rubber Co., 6 Cal. 4th 965, 1001 (1993).  Plaintiff has no

17 evidence that he was the intended target of any of the Defendant

18 officers, and consequently cannot show that any of the officers

19 intended to cause him emotional distress, as he must do to state

20 a viable claim.  Additionally, where, as here, summary

21 adjudication is granted as to federally-based section 1983 claims

22 based on Fourth and Fourteenth Amendment excessive force claims,

23 summary judgment is also appropriate with respect to any state

24 law claim for intentional infliction of emotional distress.  See

25 Finley v. City of Oakland, supra, 2006 WL 269950 at *14.

26 ///

27 ///

28 ///

1   Plaintiff's negligence claim does require an assessment of
2   whether the officers used reasonable care in quelling the
3   disturbance at issue.  <u>Miller v. Kennedy</u>, 196 Cal. App. 3d 141,
4   144 (1987).   Given the police response as detailed above, and
5   Plaintiff's decision to go outside (and into the line of fire) in
6   spite of the fact that he acknowledges being told to go inside,
7   there can be no breach of the duty to exercise reasonable care.
8   In addition, because there is no evidence that the University of
9   California, Davis officers were inadequately trained, supervised
10  or subject to discipline with respect to pepperball launcher use,
11  there can be no supervisory liability for negligence on behalf of
12  UCD Police Chief Calvin Handy.

13      Plaintiff's final state law claim, for violation of Section
14  52.1, fare no better.  Section 52.1 itself provides no
15  substantive protections; instead, it simply enables individuals
16  to sue for damages as a result of constitutional violations.
17  <u>Reynolds v. County of San Diego</u>, 84 F.3d 1162, 1170-71 (9th
18  Cir. 1996), aff'd in part and rev'd in part on other grounds in
19  <u>Acri v. Varian Assocs.</u>, 114 F.3d 999 (9th Cir. 1997).  Because no
20  constitutional violation has been established, no claim under
21  Section 52.1 is cognizable.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1

**CONCLUSION**

2

3       Based on the foregoing, Defendants are entitled to summary

4   adjudication as to all claims pled in Plaintiff's complaint.

5   Summary Judgment is accordingly GRANTED[5] and the Clerk is

6   directed to close this file.

7       IT IS SO ORDERED.

8
    Dated: September 18, 2007

9

10

11                                  _____
                                     MORRISON C. ENGLAND, JR.
12                                   UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26
    _____
27       [5] Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefing.  E.D.
28   Cal. Local Rule 78-230(h).

                                  22